## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TAYLOR ENERGY COMPANY LLC,** | **CIVIL ACTION** |
| **Plaintiff,** | **NO.:** |
| **VERSUS** | **SECTION:** |
| **UNITED STATES OF AMERICA, ACTING BY AND THROUGH THE UNITED STATES COAST GUARD, AND THE UNITED STATES COAST GUARD NATIONAL POLLUTION FUNDS CENTER,** | **JUDGE:** **MAGISTRATE:** |
| **Defendants** | |

## <u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

This Complaint for Declaratory Judgment ("Complaint") by Plaintiff Taylor Energy Company LLC ("Taylor Energy") against Defendants the United States of America, acting by and through the United States Coast Guard ("Coast Guard"), and the United States Coast Guard National Pollution Funds Center ("NPFC") (collectively "Defendants"), avers as follows:

## <u>NATURE OF THE ACTION</u>

1.

Taylor Energy seeks a declaratory judgment in connection with the issues raised in the Coast Guard's counsel's June 2, 2020 letter demanding that Taylor Energy pay "approximately $43 million in removal costs . . . in response to the oil discharge from Taylor Energy's oil production facility in the MC-20 Block of the Mississippi Canyon area of the Gulf of Mexico . . . ."  Exhibit A at 1 (hereinafter "Demand Letter").  In the Demand Letter, the Coast Guard also claims entitlement to a declaratory judgment for past and future removal costs, damages and civil penalties. *Id.* at 1-2.

2.

This Complaint arises out of the Demand Letter that is directly related to two previously filed actions in this Court which are currently pending.

3.

In the first action, Taylor Energy filed a Complaint to Vacate Administrative Order and For Other Relief on December 20, 2018 against the Coast Guard and Captain Kristi M. Luttrell, in her official capacity as Federal On-Scene Coordinator for the MC20 Unified Command.  Rec. Doc. 1 (Civil Action No. 18-14046).  Taylor Energy is challenging, among other things, the Coast Guard's issuance of Administrative Order No. 19-001 dated October 23, 2018 (the "Admin. Order") relating to containment and other activities at the site of Taylor Energy's platform jacket at Mississippi Canyon Block 20 (the "MC20 Site").  Taylor Energy requests vacatur of the Admin. Order and the actions taken in implementing it, and seeks the imposition of a permanent injunction. This matter is set for trial on the merits during December 2020.

4.

In the second action filed on December 20, 2018, which has been consolidated with the first action, Taylor Energy filed a Complaint for Declaratory Judgment and Other Relief against Couvillion Group, LLC ("Couvillion").  Rec. Doc. 1 (Civil Action No. 18-14051).  Couvillion is a contractor hired by the Coast Guard to undertake containment and other associated work at the MC20 Site in connection with the MC20 Incident (defined below), allegedly under the auspices of the challenged Admin. Order.  In that proceeding, Taylor Energy seeks a declaratory judgment that Couvillion does not have the authority to conduct any activities at the MC20 Site and damages arising from Couvillion's activities.  This matter is also set for trial on the merits during December 2020.

5.

The present Complaint is related to and arises out of these two previously filed and pending actions inasmuch as the Demand Letter seeks to hold Taylor Energy responsible for the very activities that Taylor Energy is challenging in the two previous actions. Indeed, the vast majority of the $43 million sought in the Demand Letter is attributable to work undertaken by Couvillion and its subcontractors, allegedly under the authority of the legally invalid Admin. Order.

6.

Defendants' bypassing of the established proceedings, processes, and procedures is an abuse of Taylor Energy's rights. The Defendants' actions are in direct violation of the United States Constitution and exceed their authority, statutory and otherwise.

## PARTIES

7.

Plaintiff Taylor Energy, at all material times, was and is a limited liability company organized and existing under the laws of the State of Louisiana, with its principal place of business in New Orleans, Louisiana. Taylor Energy's only member is Phyllis M. Taylor, a Louisiana resident domiciled in New Orleans, Louisiana.

8.

Defendants are the Coast Guard and the NPFC. The Coast Guard is an agency of the United States under the Department of Homeland Security. The NPFC is a unit of the Coast Guard.

## JURISDICTION AND VENUE

9.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1333, 33 U.S.C. § 2717, 43 U.S.C. § 1349, 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

10.

Venue is proper in this district pursuant to 28 U.S.C. 1391(b), 33 U.S.C. § 2717(b), and 43 U.S.C. § 1349(b)(1) because, among other reasons, it is the judicial district in which "the discharge or injury or damages occurred."  MC20 is on the Outer Continental Shelf within this judicial district.

## BACKGROUND

### Taylor Energy and the Coast Guard
### Cooperated Closely For More Than Ten Years

11.

In September of 2004, the storm Hurricane Ivan traveled through the Gulf of Mexico in the direction of the central Gulf Coast.  Taylor Energy was the lessee and operator of certain assets in the path of Hurricane Ivan – namely, the MC20A Platform and an OCS lease that included the MC20A Platform, wells and associated facilities at the MC20 Site.  Hurricane Ivan's waves caused a massive progressive seafloor failure that toppled Taylor Energy's production platform and jacket (the "MC20 Incident").

12.

Taylor Energy immediately notified the appropriate authorities of the loss of the platform and responded to the MC20 Incident.  Taylor Energy was designated by the Coast Guard as the "Responsible Party" in accordance with the Oil Pollution Act of 1990 ("OPA").  Pursuant to the National Contingency Plan, Taylor Energy was also designated as a member of the "Unified Command," along with the Coast Guard, that was established to monitor the MC20 Site and study possible further actions to be taken in connection with the MC20 Incident.

13.

For more than a decade, the Coast Guard and Taylor Energy worked cooperatively and

collaboratively under the Unified Command structure, and engaged in comprehensive collaborative scientific studies, assessments and evaluations, including coordination of all response efforts.  Indeed, on multiple occasions, the Coast Guard commended Taylor Energy for its cooperation and responsiveness in fulfilling its role as the Responsible Party.

14.

Taylor Energy has, and continues to, regularly monitor the site.  As directed by the Coast Guard, Taylor Energy conducts regular overflights of the site.  To date, Taylor Energy has expended in excess of $485 million in its efforts to address the MC20 Incident.

**Because of Political Pressure, the Coast Guard Issued the
Admin. Order, Contracted with Couvillion,  and Began Concealing
Information From Taylor Energy**

15.

On October 22, 2018, the *Washington Post* published a front page article about the MC20 Incident which was largely inaccurate, one-sided, and designed for shock value.  The article led with the sensationalized allegation that "300 to 700 barrels of oil per day have been spewing" into the Gulf of Mexico, which had no support in the established, comprehensive science previously accepted by both the Coast Guard and Taylor Energy.  Instead, the article was primarily based on an untested, unverified, non-peer reviewed study by one individual, Oscar Pineda-Garcia ("the Garcia theory") – a theory which all now concede was essentially junk science.

16.

In response to the article, and without any advance notice to Taylor Energy, the next day the Coast Guard issued the Admin. Order.  Rec. Doc. 1-3 (Civil Action No. 18-14046).  The Admin. Order "ordered" Taylor Energy to "institute a containment system to capture, contain, and remove oil" and that:

> The containment system must eliminate the surface sheen and avoid the deficiencies associated with prior containment systems. Design of the containment system shall take into consideration the site conditions provided to you. The containment system shall be designed to contain an amount with a worst case daily discharge between 250 barrels and 700 barrels per day. A design of a minimum of 250 barrels per day is acceptable at this time.

*Id.* at 1-2. *See also id.* at 14 (also requiring a plan for the "design" of a system to "top-kill the oil and gas plumes" and a timeline to "design, fabricate and deploy this system").

17.

Taylor Energy immediately sought reconsideration of the Admin. Order on October 24, 2018, and pointed out that the Coast Guard had provided Taylor Energy with no information to support the Admin. Order. Nonetheless, the Coast Guard summarily denied Taylor Energy's request for reconsideration just one day later.

18.

The Admin. Order also ordered Taylor Energy to attend a Unified Command meeting on November 6-9, 2018 to evaluate and select a containment and recovery system from six to eight competing proposals. But the Coast Guard declined to provide any information about the bidding contractors or their proposed containment and recovery systems to Taylor Energy. On November 9, 2018, the Coast Guard advised Taylor Energy that it had unilaterally selected Couvillion as the contractor under the Admin. Order. On November 13, 2018, the Coast Guard informed Taylor Energy that it would have 48 hours to execute a "take it or leave it" contract with Couvillion, in which Couvillion insisted on onerous contract terms. Taylor Energy and Couvillion were unable to agree upon a commercially reasonable contract by the short deadline dictated by the Coast Guard.

19.

A few days later, on November 16, 2018, the Coast Guard took the almost unprecedented action of issuing a Notice of Federal Assumption ("Notice") in which the Coast Guard stated that it was partially assuming response actions pertaining "to all activities related to the development and installation of a containment system; removal and disposal of oil collected in the containment system; and maintenance of a containment system at the MC20 Site."  Rec. Doc. 1-4 (Civil Action No. 18-14046).  The Coast Guard then accepted Couvillion's proposal and entered into agreements with Couvillion for work in connection with the MC20 Incident.

20.

Over the following year and a half, the Coast Guard has continued to keep Taylor Energy in the dark about work at the MC20 Site, despite Taylor Energy's repeated requests for information.  For example, the Coast Guard sent a very cryptic letter to Taylor Energy on May 16, 2019, claiming that the Couvillion containment system had been installed and "is functioning as designed."  Taylor Energy responded with a plea for information in a May 24, 2019 letter, emphasizing again that it "has been provided virtually no data or information concerning the Coast Guard's selection of Couvillion, the deployment of the system at MC20, or the performance of the system to date."  Taylor Energy requested basic information about the "design and installation of the containment system," "[d]etails and specifications of Couvillion's work," "[p]lanned or proposed additional activities for the MC20 Site," and "[t]imelines and plans of presently contemplated additional activities at MC20," among other items of information.  The Coast Guard ignored and continues to ignore this plea.

21.

As a more recent example, on March 14, 2020, Taylor Energy's President sent an email to the Coast Guard.  He requested information about Couvillion's work at the MC20 Site given Taylor

Energy's continuing response obligations as the Responsible Party for MC20 and because Couvillion's ongoing activities under the Admin. Order had recently created aberrantly increased oil sheens of hundreds--even thousands--of gallons on the Gulf's surface, at times showing dark or dull oil on the surface.  The Coast Guard responded on March 16, 2020 that Taylor Energy had "no need for any information about the containment system."

22.

Taylor Energy even sent numerous Freedom of Information Act requests to the Coast Guard in an attempt to gain information about the Coast Guard's and Couvillion's activities at the MC20 Site and in connection with the MC20 Incident.  The Coast Guard has essentially ignored the requests.

**The Coast Guard Began Sending Bills to Taylor Energy
But Refused to Provide Meaningful Backup**

23.

Beginning in July 2019 and continuing into 2020, at the same time it was refusing to provide Taylor Energy with any meaningful information about ongoing and planned MC20 activities, the Coast Guard began sending generalized NPFC bills to Taylor Energy for millions of dollars in removal costs allegedly incurred in connection with the MC20 Incident.   The overwhelming portion of these bills relate to "CG Contract" ($26,286,067.77 on the July 10, 2019 bill and $10,971,184.27 on the March 13, 2020 bill).  The bills contained little or no supporting data or information to justify the huge expenses being incurred as a part of the Coast Guard's MC20 response.  Taylor Energy assumes the "CG Contract" is with Couvillion.

24.

Taylor Energy repeatedly requested, albeit unsuccessfully, that the Coast Guard provide Taylor Energy with sufficient backup information to support the billings.

25.

The following are just a few examples of the deficiencies with the NPFC bills sent to Taylor Energy:

a.      Defendants did not provide documents showing that any payments were actually made to contractors, vendors, subcontractors, suppliers, Coast Guard personnel and other agencies. In particular, the documentation provided by the Defendants is devoid of any evidence that Couvillion was actually paid and/or that Couvillion actually paid subcontractors, consultants, suppliers, and vendors.

b.      As part of its work at the MC20 Site, Couvillion has been selling oil collected at the site, and those sales should offset a portion of the removal costs allegedly owed.  Defendants have refused to supply Taylor Energy with any documentation regarding these offsetting sales.

c.      Defendants have refused to supply Taylor Energy with any evidence that the oil being collected as part of the response operation is actually oil sourced to the Taylor Energy wells at the MC20 Site.  Indeed, Taylor Energy disputes this issue, and Taylor Energy's position is supported by substantial scientific analysis including samples of oil collected by Couvillion not matching the historical fingerprint of Taylor Energy's MC20 oil.

d.      The billings for the removal costs improperly include substantial sums for damage caused by third parties, including the Coast Guard's own contractor, Couvillion.  As noted above, Couvillion's actions at the MC20 Site have caused significant increases in sheens on the Gulf's surface.

e.      According to the Coast Guard, the NPFC billings to Taylor Energy should not include any amounts relating to well intervention or plug and abandonment activity.  However, the limited support sent to Taylor Energy by the NPFC clearly includes such amounts.

f.    The bills include grossly exaggerated and materially suspect sums.  Couvillion's proposal, which the Coast Guard accepted, indicated that the MC20 work would cost, including substantial contingencies, approximately $3 million.  Yet, incredibly, Couvillion's bills have mushroomed to many multiples of the original bid – to approximately $40 million – demonstrating that the Coast Guard is not properly monitoring or controlling Couvillion's actions.

g.    The Coast Guard is allowing Couvillion to charge a twenty percent (20%) administrative fee or markup on top of the work that it is performing, and in addition, it is apparently allowing Couvillion's subcontractors to charge similar markups.  In other words, a substantial portion of the bills are not actual work, but rather just markups on top of markups which is completely unjustified.

## The Coast Guard's Counsel's Deficient Demand Letter

26.

On June 2, 2020, the Coast Guard, through counsel, sent the Demand Letter – entitled a "Pre-filing Notice of Claims" – to Taylor Energy's counsel in another proceeding, not to Taylor Energy.  Exhibit A.

27.

The Demand Letter stated that the Coast Guard "is prepared to file claims" against Taylor Energy "related to the ongoing discharge of oil from the area leased and involving the oil and gas production facility owned and operated by Taylor Energy in the Gulf of Mexico."  *Id*. at 1.

28.

In addition, the Demand Letter stated that the Coast Guard "will seek" in litigation:

- The recovery of approximately $43 million in removal costs paid by the Oil Spill Liability Trust Fund (the "Fund"), administered by the Coast Guard's National Pollution Funds Center, in response to the oil discharge from Taylor Energy's oil production facility in the MC-20 Block of the Mississippi

Canyon area of the Gulf of Mexico, from Taylor Energy as a responsible party under Section 1002(a) of the Oil Pollution Act ("OPA"), 33 U.S.C. § 2702(a), and as an owner or operator of an Outer Continental Shelf facility under OPA Section 1004(c)(3), 33 U.S.C. § 2704(c)(3);

- A declaratory judgment, under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), the OPA, 33 U.S.C. §§ 2702(a), 2704(c)(3), 2705, and 2717(f)(2), and the Clean Water Act ("CWA"), 33 U.S.C. § 1321(f)(4) & (5), against Taylor Energy for all removal costs and damages, including natural resource damages, to be incurred in this action and in any subsequent action or actions; and

- Civil penalties, under Section 311(b)(7) of the CWA, 33 U.S.C. § 1321(b)(7), against Taylor Energy of up to $48,192 per day of violation or $2,100 per barrel of oil that has been discharged; or at least $192,768 per day or up to $5,783 per barrel of oil that has been discharged, to the extent that the discharge of oil was the result of gross negligence or willful misconduct by Taylor Energy.

Exhibit A at 1-2.

### 29.

As is evident from the Demand Letter, the Coast Guard apparently submitted its bills to the Oil Spill Liability Trust Fund ("OSLTF") for payment, and the OSLTF apparently paid Couvillion, before presenting them to Taylor Energy as the Responsible Party, in violation of 33 U.S.C. § 2713.

### 30.

The Demand Letter also failed to acknowledge that the demand for payment was preempted by, or was at least premature because of, other ongoing proceedings that control whether Taylor Energy owes any sums to Defendants, and if so, how much.  By way of example:

a.    As noted above, two consolidated actions are already pending in this district relating to the validity of the Admin. Order and the MC20 activities undertaken by Couvillion on behalf of the Coast Guard.  Civil Action Nos. 18-14046 and 18-14051 (E.D. La.).  Inasmuch as

the $43 million sought in the Demand Letter is tied directly to the Admin. Order and Couvillion's alleged work and billings, the issues raised in the Coast Guard's Demand Letter cannot be addressed without first resolving the subject matter asserted in the two consolidated cases already pending in this district.

b.      Under OPA, the Responsible Party has a statutory defense to any liability to the extent the removal costs are a result of an "act of God" as defined in OPA. *See* 33 U.S.C. §§ 2701(1), 2703, 2708(b), 2713(b)(1)(B).   This very issue – whether Taylor Energy is entitled to invoke the act of God defense under OPA – is currently the subject of another proceeding that is ongoing. *See Taylor Energy Company LLC v. United States of America,* Civil Action No. 20-01086 (D.D.C.).

c.      In the Demand Letter, Defendants claim they are entitled to a declaratory judgment against Taylor Energy for all damages, including "natural resource damages." Exhibit A at 2.  Yet, the "natural resource damages," if any, are themselves the subject of a separate process, the Natural Resource Damages Assessment ("NRDA") Process being administered by the National Oceanic and Atmospheric Administration ("NOAA").  This NRDA process has been pending for over four years since late 2015.  NOAA has represented to Taylor Energy that that process is still at the preliminary assessment stage, meaning it is ongoing.

31.

The Demand Letter concluded by inviting Taylor Energy to a settlement meeting if it was interested in "resolving the matter short of litigation." *Id*. at 2.  Taylor Energy promptly accepted this invitation with the expectation of an in person, substantive discussion.

32.

However, the Coast Guard refused to meet with Taylor Energy in person.  As a result, on June 15, 2020, the parties met by Zoom conference for the purpose of trying to resolve their

differences, but they were unable to do so.  As a result, Taylor Energy was left with no choice but to file this action.

**CAUSE OF ACTION**

**Count I – Declaratory Judgment**

33.

Taylor Energy incorporates by reference the preceding paragraphs of the Complaint and the details set forth in the documents referenced in and attached to the Complaint.

34.

In accordance with 28 U.S.C. § 2201, *et seq.,* Taylor Energy is entitled to a declaratory judgment to determine its rights and responsibilities, if any, in connection with the issues raised in or related to the Coast Guard's Demand Letter.

35.

Taylor Energy seeks a declaratory judgment that it does not owe any sums to Defendants, for removal costs, penalties, damages or otherwise, and that Defendants are not entitled to the declaratory judgment they seek in the Demand Letter or any other relief.

36.

In the alternative, and reserving any and all rights to challenge and object to any removal costs, penalties, damages or other relief sought by Defendants, Taylor Energy seeks a declaratory judgment:

a.      that it is not obligated to pay any of those sums at this juncture until proper and sufficient justification and backup documentation is provided to Taylor Energy and/or until all other pending litigation, proceedings or processes relating to the issues in the Demand Letter are fully resolved; and

b.      that Defendants' attempts to pursue any relief outlined in the Demand Letter should be stayed until such circumstances occur.

37.

In the further alternative, and reserving any and all rights to challenge and object to any removal costs, penalties, damages or other relief sought by Defendants, Taylor Energy seeks a declaratory judgment that any amounts for which it is responsible are less than demanded by Defendants.

38.

Taylor Energy also seeks a declaratory judgment that the Defendants', and their officers', actions described above and below constitute a violation of Taylor Energy's procedural and substantive due process rights and constitute actions beyond and in violation of any statutory or other legal authority.   These actions include, but are not limited to: continuing to take unconstitutional and illegal actions that arise out of the issues addressed in the two prior lawsuits filed on these issues in this district; concealing information from Taylor Energy about work at the MC20 Site, the expenses being incurred in connection therewith, and the process and criteria by which Defendants, or others, are making determinations about the expenditures for which Taylor Energy is allegedly responsible; negligently and recklessly incurring inappropriate and excessive removal costs; depriving Taylor Energy of the right to meaningfully defend its interests; taking actions without consulting or notifying Taylor Energy; improperly attempting to pursue these amounts from Taylor Energy; threatening to sue Taylor Energy when the underlying issues are already the subject of prior, pending proceedings; and bypassing the established proceedings, processes, and procedures relating to the issues in the Demand Letter and this Complaint.

39.

Indeed, these actions, have been improper, negligent, grossly negligent, willfully reckless, arbitrary and capricious, an abuse of discretion, and are an abuse of rights.

40.

The facts set forth throughout this Complaint demonstrate Taylor Energy's entitlement to a declaratory judgment, and the following is an illustrative summary:

a.     Taylor Energy is not liable for any removal costs, penalties or damages because the Admin. Order and Couvillion's activities, which form the basis for the billings, are invalid and improper as a matter of law, all as set forth in other litigation pending in this district.

b.     The removal costs were unnecessarily incurred, and thus are unjustified, because the comprehensive consensus science established that no further activities should be undertaken at this time at the MC20 Site and would only make matters worse, which has in fact occurred.

c.     Any oil that has been collected at the MC20 Site by the Coast Guard and/or Couvillion is not oil sourced to the Taylor Energy wells at MC20.

d.     Taylor Energy does not owe any removal costs inasmuch as Taylor Energy is entitled to an act of God defense under OPA, as set forth in other litigation.

e.     Taylor Energy is not liable for any natural resource damages, as such determination is the subject of the ongoing NRDA Process.

f.     The Demand Letter sent to Taylor Energy by the Defendants is legally deficient. The letter was sent to Taylor Energy's counsel in other litigation, not to Taylor Energy.  In addition, the Demand Letter violates 33 U.S.C. § 2713(a), among other provisions, because the Coast Guard did not present the bills at issue to Taylor Energy as the Responsible Party before submitting them to the Oil Spill Liability Trust Fund for payment.

g.      The Coast Guard has not supplied Taylor Energy with sufficient backup or supporting information to justify the amounts it seeks in the Demand Letter.

h.      The Coast Guard has not provided Taylor Energy with information regarding the sale of oil by Couvillion, which offsets any amounts allegedly owed.

i.      Taylor Energy is not liable for expenses relating to the ongoing improper acts by the Coast Guard and Couvillion which have resulted in substantially increased and excessive removal costs.

j.      As the Coast Guard has notified Taylor Energy, Taylor Energy is not liable for well intervention and plug and abandonment activities that are contained in the bills.

k.      The bills include exaggerated and excessive sums for which Taylor Energy should not be responsible.

l.      Taylor Energy has done nothing to trigger any penalty provisions, and Taylor Energy certainly has not been grossly negligent or engaged in any willful misconduct.  The removal costs were as a result of an act of God event.

## JURY DEMAND

41.

Taylor Energy requests a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Taylor Energy Company LLC prays that the foregoing Complaint for Declaratory Judgment be deemed good and sufficient, and that after due proceedings have been had, the Court grant judgment in favor of Plaintiff Taylor Energy Company LLC and against Defendants the United States of America, acting by and through the United States Coast Guard, and the United States Coast Guard National Pollution Funds Center, for a declaratory judgment as sought in the foregoing Complaint for Declaratory Judgment, and for any and all other legal and

equitable relief to which Taylor Energy Company LLC may be entitled and as the Court may deem

appropriate, including, but not limited to, costs, expenses, and reasonable attorney's fees.

Dated this 15th day of June, 2020.

Respectfully submitted,

*s/ Carl D. Rosenblum*
CARL D. ROSENBLUM, T.A. (#02083)
THOMAS A. CASEY, JR. (#01291)
ALIDA C. HAINKEL (#24114)
LAUREN C. MASTIO (#33077)
TAYLOR K. WIMBERLY (#38942)
Jones Walker LLP
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone:  (504) 582-8000
Facsimile:  (504) 589-8296
crosenblum@joneswalker.com

**Counsel for Taylor Energy Company LLC,
Plaintiff**